THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

COLLEGEAMERICA SERVICES, INC.,    )      Case No.  2:11CV01208 DS

                    Plaintiff,    )

        vs.                       )

                                  )        MEMORANDUM DECISION
WESTERN BENEFIT SOLUTIONS,                    AND ORDER
LLC, ET AL.,                      )

                    Defendants.   )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.  INTRODUCTION

Defendants move to enforce a Mediation and Arbitration Agreement entered into by Plaintiff and Defendant Keoppel on August 27, 2010.  They urge that Plaintiff should be compelled to arbitrate all of its claims against all Defendants.

Briefly these are the relevant facts.  Plaintiff, which provides administrative and other services to private colleges and universities, hired Defendant Keoppel as its Vice President of Human Resources beginning September 7, 2010.  Along with an Employment Agreement, Plaintiff and Defendant Keoppel also entered into an Arbitration Agreement which provides that "[a]ny and all disputes, conflicts, problems, controversies, or claims of any kind arising from or connected to" Keoppel's employment with College America must first be submitted to management, and then to mediation.  And if not resolved at mediation, the matter must be

submitted to binging arbitration.  Mem. Supp. at 3-4.  Keoppel left his employment with Plaintiff in late 2011.

On March 11, 2011, Plaintiff and Defendant Western Benefit Solutions, LLC, ("WBS") executed a Consulting Agreement whereby WBS agreed to provide Plaintiff employee benefits brokerage and consulting services.  The Consulting Agreement does not contain an arbitration provision.

Plaintiff filed this lawsuit asserting claims against Keoppel arising from his employment with CollegeAmerica.  Plaintiff also complains that Defendants WBS and Ron Osborne violated their Consulting Agreement and made improper inducements to Keoppel to breach his contract and duties owed to Plaintiff.

It is undisputed by the parties that federal policy and law favors arbitration agreements.

## II. DISCUSSION

**A.  Claims against Keoppel.**

On its face, the Arbitration Agreement bars Plaintiff's claims against Keoppel and mandates arbitration.  The Court rejects Plaintiff's assertion that it cannot be compelled to arbitrate its claims against Keoppel because Keoppel acted inconsistent with his right to arbitrate and waived his right to compel arbitration when he chose to file an answer.  Keoppel's Answer expressly assets as an affirmative defense his right to arbitration and that this lawsuit is barred by the Arbitration Agreement.  Keoppel also

demanded to enforce the Arbitration Agreement through email correspondence soon after his answer was filed. Additional factors weighing in favor of enforcing arbitration are that the litigation is still in its infancy, and Plaintiff will not be prejudiced if it is compelled to arbitrate. Additionally, Defendant Keoppel has taken no steps to invoke the judicial process in this matter so as to constitute a waiver of arbitration. *See Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467-68 (10th Cir. 1988)(citing factors to be considered in determining when a contractual right to arbitration is unenforceable). *See also Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772-3 (10th Cir. 2010)(same).

**B. Claims against WBS and Osborne**

WBS and Osborne contend that Plaintiff's claims against them are inseparably intertwined with Keoppel's Employment Agreement and Keoppel's Arbitration Agreement and that Plaintiff must submit its claims against them to binding arbitration as well.

Plaintiff asserts that its claims against Defendants WBS and Osborne arise out of their Consulting Agreement, which does not contain an arbitration provision. Plaintiff also notes that WBS has asserted a Counterclaim based solely on the Consulting Agreement.

It is undisputed that Utah law governs this issue. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). Under certain circumstances Utah law permits a nonsignatory to an arbitration

3

agreement to enforce or be bound by an agreement between other parties based on the theory of nonsignatory estoppel. *Ellsworth v. American Arbitration Ass'n*, 148 P.3d 983, 989 (Utah 2006). In *Ellsworth*, the Utah Supreme Court teaches as follows:

> The general rule of arbitration agreements is that one who has not manifested assent to an agreement to arbitrate cannot be required to submit to arbitration. However, under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties.
>       ... The rationale behind [nonsignatory estoppel] is that a nonsignatory should be estopped from avoiding arbitration when the nonsignatory seeks to benefit from some portions of the contract but avoid the arbitration provision. In cases where estoppel has been implemented against a nonsignatory, the nonsignatory has sued a signatory on the contract to his benefit but sought to avoid the arbitration provision of the same contract. A nonsignatory will also be estopped when it receives a "direct benefit" from the contract which contains the arbitration clause. This variety of nonsignatory estoppel has been employed only when the nonsignatory sues the signatory on the agreement after receiving "direct benefits" but seeks to avoid arbitration.

*Ellsworth*, 148 P.3d at 989 (citations and footnotes omitted).

The Court is not persuaded that nonsignatory estoppel as outlined in *Ellsworth* has any application to the present case. Plaintiff, a signatory to both the Arbitration Agreement and the Employment Agreement with Keoppel, wishes to avoid arbitration. Whereas Defendants WBS and Osborne, who are not signatories to those agreements, wish to enforce the arbitration provision contained in the Arbitration Agreement between Plaintiff and Keoppel. "[T]he nonsignatory estoppel exception does not apply to

... a nonsignatory who is not suing on the contract and who has not received direct benefits from the contract." *Id*. Defendants WBS and Osborne do not fit under either of the two categories set forth in *Ellsworth*. They are not suing on Keoppel's Employment Agreement and they did not directly benefit from that Contract.

In a footnote, Ellsworth references a third type of estoppel. "Another variety of nonsignatory estoppel is that enforced by a nonsignatory when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory." Id. at n.12. The parties do not fit under this scenario either.

In support of their position that Plaintiff be compelled to arbitrate all claims, Defendants cite *Lenox MacLaren Surgical Corp. v. Medtronic, Inc*., 449 Fed. Appx. 704 (10th Cir. 2011). In referencing some common elements of the law relating to nonsignatory estoppel, the court noted that in *MA Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), "[t]he Eleventh Circuit held that estoppel will permit a nonsignatory to compel arbitration in two circumstances. The first is when the signatory "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." *Id*. at 708 (citations and internal quotations marks omitted). And "[t]he second is when the signatory alleges substantially interdependent

5

and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id*. (citations and internal quotations marks omitted).   Because Utah law governs this issue, Defendants must establish that the Utah Supreme Court would permit a nonsignatory to compel a signatory to arbitrate its claims under either of the two circumstances identified by the Eleventh Circuit. This Defendants have failed to do.

Even if the Court were to conclude that the Utah Supreme Court would adopt the analysis of the Eleventh Circuit as referenced in *Lenox MacLaren Surgical Corp*, Defendants have failed to establish that the present case fits either scenario contemplated by the Eleventh Circuit.   "For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them."   *Id*. at 709 (citations omitted).   Notwithstanding Defendants' assertion that each of Plaintiff's claims against WBS and Osborne are based on allegations that WBS and Osborne made improper inducements to Keoppel to persuade him to breach the same fiduciary duties encompassed in Keoppel's Employment Agreement, a fair reading of the Complaint reflects that the Arbitration and Employment Agreements with Keoppel do not form the legal basis of each of Plaintiff's claims against WBS and Osborne.   Rather, it appears to the Court that the

claims against WBS and Osborne, for the most part, arise out of the Consulting Agreement executed by CollegeAmerica and WBS.

As for the second scenario under Eleventh Circuit analysis where nonsignatory estoppel would apply, "[t]he claims must be 'so intertwined with the agreement' that 'it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement.'" Id. at 710 (citations omitted). And "allegations of collusion between a signatory and a nonsignatory, alone, are not enough to estop a signatory from avoiding arbitration with a nonsignatory." Id. Instead, "allegations of collusion will support estoppel 'only when they establish that the claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause.'" Id. at 710 (citations omitted). The Court is not persuaded that such is the case here.

Although, CollegeAmerica acknowledges that it also claims WBS and Osborne improperly sought to obtain its business by providing Keoppel gifts and to induce Keoppel to leave his employment with Plaintiff, it asserts that these facts do not render the entirety of Plaintiff's claims against WBS and Osborne founded in or intertwined with Keoppel's Employment agreement. After carefully reading the Complaint, the Court agrees. As noted, most of the claims alleged against WBS and Osborne arise out of their

Consulting Agreement with Plaintiff.  Plaintiff does not allege substantially interdependent and concerted misconduct by Keoppel and WBS and Osborne such that it would be unfair to allow Plaintiff to disavow the arbitration provision in its contract with Keoppel.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Enforce Mediation and Arbitration Agreement (Doc. #16) is granted as it relates to the claims against Defendant Keoppel, and denied as it relates to the claims against Defendants WBS and Osborne.

DATED this 2nd day of May, 2012.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT